**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| COURTNEE T. POKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-613 SRW |
| | ) | |
| LT. PAMELA CLARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented plaintiff Courtnee T. Poke for leave to commence this civil action without prepayment of the required filing fee. Doc. [2].  Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1).

Additionally, for the reasons discussed below, the Court finds that plaintiff's official capacity claims against the individual defendants, his claims for negligence, his claims against the St. Louis City Justice Center, as well as all claims against defendant Correctional Officers Dixon, Hamilton, Robinson, Carr and Moorehead, are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

However, the Court will issue process or cause process to issue as to defendant St. Louis City on plaintiff's claim that MSI was deliberately indifferent to the risk of plaintiff's medical issues by failing to have a policy of calling a physician when an inmate complained of chest pains, suffocation and/or difficulty breathing. The Court will also issue process as to defendant St. Louis City as to plaintiff's claim that MSI was deliberately indifferent to the risk of plaintiff's suicidal

ideation by failing to have a policy of either calling a physician when an inmate complained of suicide or properly assessing that inmate for suicidal thoughts according to a specific medical policy.

The Court will also issue process or cause process to issue as to defendant Correctional Officers Boatman and Darden, in their individual capacities, as to plaintiff's claims for deliberate indifference to his serious medical needs with respect to their failure to allow him to decontaminate after he was maced, in violation of the Fourteenth Amendment. The Court will issue process or cause process to issue upon the complaint as to defendant Correctional Officers Clark, Nolan, Darden and Boatman, in their individual capacities, for claims of deliberate indifference to his serious medical needs relating to their failure to treat his suicidal ideations in violation of the Fourteenth Amendment. Last, the Court will issue process or cause process to issue upon the complaint as to defendant Correctional Officer Clark, in his individual capacity, as to plaintiff's claims for excessive force in violation of the Fourteenth Amendment.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a *certified* prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a *certified* copy of his account statement in support of his claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff, an inmate currently incarcerated at Eastern Reception Diagnostic and Correctional Center (ERDCC), brings this action concerning alleged violations of his civil rights during his imprisonment at St. Louis Medium Security Institution (MSI) in St. Louis, Missouri. Plaintiff names the St. Louis City Justice Center, as well as four individuals as defendants in the caption of his complaint: Lieutenant Pamela Clark; Correctional Officer Unknown Boatman; Correctional Officer Unknown Darden; and Captain Unknown Nolan. Plaintiff brings this action against defendants in their individual and official capacities. Also named as defendants in the body of plaintiff's complaint are Correctional Officers Unknown Dixon, Unknown Hamilton, Unknown Robinson, Unknown Carr and Unknown Moorehead. Plaintiff has not indicated the capacity under which he is suing these specific defendants. Thus, the Court must assume he is suing them in their official capacities only.[1]

---

[1] *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007); *see also Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity").

Plaintiff alleges that in July of 2021, he was randomly moved from his location as an inmate at the St. Louis City Justice Center, which had a full-time medical staff, to the St. Louis Medium Security Institution, which did not have any medical personnel on staff. Plaintiff complains that placing him at MSI, a place without medical staff, put him "at risk" in case he had a "life-threatening" medical emergency.

Plaintiff states that on August 13, 2021, he complained to his on-duty officer, Correctional Officer Dixon, that while he was contained in his cell, he was having "chest pains," difficulty breathing, and felt like he was "suffocating." He states that the air conditioning inside his cell was inoperable at MSI on this same day. Officer Dixon had Plaintiff exit his cell at that time. However, he states that there were no medical personnel at MSI on staff in August of 2021. Thus, although Correctional Officer Dixon should have radioed that a Code #3 "per policy," indicating that an inmate was having chest pains and difficulty breathing and necessitating a response by a medical officer, "Dixon was unable to radio a Code #3 because no medical staff was available." Plaintiff claims he was placed in "problematic health risk" in the event of a life-threatening medical emergency at that time.

Plaintiff asserts that on August 14, 2021, he complained to his on-duty officer, Correctional Officer Hamilton, that he was "suffocating" and having difficulty breathing "inside [his] cell." He claims that he told Officer Hamilton he was having "mild chest pains." Plaintiff states that the air conditioning inside his cell was inoperable at MSI on this same day. Plaintiff claims that Officer Hamilton was aware of his prior medical complaints from the day before, and he had him had him exit his cell "for temporary relief."

Again, plaintiff insists that there were no medical personnel at MSI on staff in August of 2021. Thus, although Correctional Officer Hamilton should have radioed that a Code #3 "per

policy," indicating that an inmate was having chest pains and difficulty breathing and necessitating a response by a medical officer, "Hamilton was unable to radio a Code #3 Medical Emergency because no Medical Staff was available and had been completely removed from the facility." Plaintiff claims he was placed in "problematic health risk" in the event of a life-threatening medical emergency at that time.

Plaintiff alleges that on August 29, 2021, he complained to his on-duty officer, Correctional Officer Robinson, that he was having difficulty breathing "while inside his cell." Plaintiff states that the air conditioning had again malfunctioned on this date. He claims he told Correctional Officer Robinson that he was "suffocating" and experiencing "chest pains." Plaintiff asserts that although Correctional Officer Robinson expressed concern for him, he was confused as to how to respond because there was not medical staff available at the time to check on plaintiff. Nonetheless, plaintiff claims that Officer Robinson "proceeded with a Code #3 radio call acknowledging that no response would come." He claims that Officer Robinson then allowed him to exit his cell, however, no medical personnel responded to the radio call from Officer Robinson. Plaintiff asserts that he was placed in "problematic health risk" in the event of a life-threatening medical emergency at that time.

Plaintiff alleges that on August 30, 2021, for the fourth time in a month, he once again complained to the on-duty Correctional Officers, Officer Carr and Officer Moorehead, that he was having "difficulty breathing" while inside his cell, as well as having "chest pains" and feeling as though he was "suffocating." He states that again the air conditioning unit was not working inside his cell. Plaintiff claims that although the officers "responded with understanding" and allowed him to come out of his cell, Officer Moorehead did not radio a Code #3 for medical staff to assess plaintiff because she knew "medical staff was not available" to respond. Plaintiff claims he was

placed in "problematic health risk" in the event of a life-threatening medical emergency at that time.

Plaintiff alleges that on this same date, on August 30, 2021, he told staff that he was having "ideations of suicide." He stated to Officer Moorhead that he was still having "chest pains" and difficulty breathing, and that after attempting to seek medical treatment for his issues on several occasions, which "ended in failure" because no medical staff was being maintained at MSI, he was feeling suicidal.

Plaintiff claims that after he discussed his suicidal ideations with Officer Moorhead, defendant Correctional Officers Clark, Nolan, Darden, and Boatman responded to the housing unit to assess the situation. Plaintiff was told that he was going to be taken to processing and then taken to medical at the St. Louis City Justice Center. However, plaintiff complains that when his hands were cuffed behind his back, he was instead escorted by the officers to the Disciplinary Segregation Unit. Plaintiff told defendants that he would not be able to breathe in the Disciplinary Segregation cell where the "chuckhole" was not open, as he had previously had a difficult time breathing in his cell with the "chuckhole" left open.[2]

Plaintiff states that defendant Clark said to him, "Oh, so you can't breathe, huh." He alleges that as he began to explain again, while his hands were still cuffed behind his back, defendant Clark sprayed him with mace and stated, "Ok, so you really can't breathe now, Mother Fucker." Plaintiff asserts that he was then forced inside the Disciplinary Segregation cell by defendants Boatman and Darden where they left him, covered in mace, for 30-45 minutes.

---

[2]Plaintiff has attached to his complaint a copy of his Informal Resolution Request (IRR), and the remaining allegations are taken from the IRR. *See* Fed.R.Civ.P.10(c) (A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes).

Plaintiff alleges that "eventually" he was able to shower, and he was provided with his property. He claims that he again complained to defendants Boatman and Darden that he felt suicidal inside the Disciplinary Segregation cell and that he could not breathe. However, he was not removed from the cell. "When several minutes passed," plaintiff alleges that he attempted to take his own life with a pencil from inside the Disciplinary Segregation cell. He was taken to St. Louis University Hospital by ambulance.

Plaintiff seeks monetary damages in this action.

### Discussion

Plaintiff claims that defendants had an unlawful policy of housing inmates at MSI without proper medical staff at the facility. This claim appears to relate to his medical allegations of chest pains, suffocation, and difficulty breathing, as well as his allegations that defendants failed to properly assess his suicidal ideations after he reported them to several defendants.

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs as to three separate issues: (1) when he was having chest pains, suffocation, and difficulty breathing during the month of August of 2021; (2) when defendant Correctional Officers Boatman and Darden left him in his Disciplinary Segregation cell covered in mace for 30-45 minutes and failed to allow him to wash off the mace; (3) and when he told defendant Correctional Officers Clark, Nolan, Darden and Boatman that he was suffering from suicidal ideation and they failed to get him medical care for his needs. Plaintiff further asserts that defendant Correctional Officer Clark used excessive force against him in violation of the Fourteenth Amendment. Last, plaintiff claims that the defendants were negligent in housing individuals in MSI without medical staff.

### A.  Official Capacity Claims Against All Defendants

Plaintiff explicitly indicates he is suing defendant Correctional Officers Clark, Boatman, Darden and Nolan in their official capacities. Although plaintiff did not so indicate, the Court must also assume that he is suing the remaining individual defendants only in their official capacities, as set forth in footnote 1, *supra*: Correctional Officers Unknown Dixon, Unknown Hamilton, Unknown Robinson, Unknown Carr and Unknown Moorehead. Personal-capacity suits typically allege that a government official is individually liable for the deprivation of a federal right as a result of actions taken outside the scope of his official duties, but under color of law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In such suits, the face of the complaint must clearly notify the defendant that he may be personally liable for any damages arising out of the suit. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). To prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

A jail, however, is not a distinctly suable entity under 42 U.S.C. § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (1992); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("county jails are not legal entities amenable to suit"); *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department because they are not suable entities). Consequently, plaintiff's complaint is legally frivolous against St. Louis City Justice Center.

However, if St. Louis City is substituted as defendants' employer, it appears that plaintiff possibly could sustain a claim with respect to his assertion that defendants had an unlawful policy of housing inmates at MSI without proper medical staff.

Unlike the Jail, a local governing body such as St. Louis City can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

"Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy

with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

For a governmental entity to be liable under *Monell*, a plaintiff must show that their injury was caused by "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. 658, 694 (1978). The same rule applies to private entities performing state functions, including providing medical care to inmate. *See, e.g., Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997). *Monell* liability attaches: "(1) where a particular municipal policy or custom itself violates federal law or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817–18 (8th Cir. 2009).

Plaintiff asserts in his complaint that on four separate occasions in August of 2021, he complained of having chest pains, had difficulty breathing, and felt as though he was suffocating while inside an unairconditioned cell at MSI. He alleges that it was the policy of MSI at the time not to have a trained medical person on staff to check inmates for medical issues, and that despite his symptoms, he was not checked over by a medical professional. Plaintiff also complains that

11

when he asserted that he was having suicidal ideations, defendants did not properly assess him and failed to call a medical professional. Rather, defendants took him to a Disciplinary Segregation cell and gave him his property, which he used to attempt suicide.

Although the Court does not believe it is the individual officers in this action who are liable in their official capacities for MSI's policy (or lack of policy), "a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom." W*ebb v. City of Maplewood*, 889 F.3d 483, 486 (8th Cir. 2018). Furthermore, "situations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation." *Speer v. City of Wynne, Arkansas*, 276 F.3d 980, 986 (8th Cir. 2002). That said, "there must be an unconstitutional act" by an employee even if that employee is not liable in their individual capacity. *Webb*, 889 F.3d at 487 (citations omitted). Meaning, taken as a whole, the officers' failure to call medical staff at MSI, because no medical staff was available to call, when plaintiff was complaining of chest pains, suffocation, and difficulty breathing can form a basis for municipal liability. Similarly, the failure to call medical staff to assess plaintiff for suicidal ideation, or properly assess plaintiff for suicidal ideation prior to placing plaintiff in a Disciplinary Segregation cell with his property can also form the basis for a constitutional violation.

There is a constitutional right to adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To be adequate, medical care must involve sufficiently trained providers, with sufficiently valid tools at their disposal. *See, e.g., Shadrick v. Hopkins Cty., Ky.,* 805 F.3d 724, 738–40 (6th Cir. 2015) (holding that a reasonable jury could find that a jail medical contractor was deliberately indifferent when its training and supervision resulted in "nurses who lack the essential

knowledge, tools, preparation, and authority to respond to the recurring medical needs of prisoners in the jail setting."); *see also, Buckley v. Rogerson*, 133 F.3d 1125, 1130–31 (8th Cir. 1998) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (holding that "systemic deficiencies" such as inadequate staffing and/or training of medical staff "can provide the basis for a finding of deliberate indifference"); *Burke v. Regalado*, 935 F.3d 960, 1000 (10th Cir. 2019) (holding that understaffing and inadequate training of medical staff was a policy or custom that caused inmate's death, and that the Sheriff was deliberately indifferent to the harm such understaffing and poor training could cause.)

Here, plaintiff's allegations that MSI had a custom and policy of medical understaffing and a lack of meaningful physician supervision, allows this Court to conclude that MSI was deliberately indifferent to the risk of plaintiff's medical issues by failing to have a policy of calling a physician when an inmate complained of chest pains, suffocation and/or difficulty breathing. The Court will issue process as to St. Louis City on this claim.

Similarly, when plaintiff complained of suicidal ideation, defendants failed to properly adhere to a custom or practice of assessing his risk of suicide, and plaintiff states that no medical professional was called to assess his risk. While there may not be a constitutional requirement that only a licensed physician or psychiatrist perform a suicide evaluation, plaintiff alleges that no assessment was done on whether he was suicidal prior to placing him in the Disciplinary Segregation cell.[3] The Eighth Circuit has clearly found "that a risk of suicide by an inmate is a serious medical need." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). Thus, there should

---

[3]*Cf. Ernst v. Creek Cty. Pub. Facilities Auth.,* 697 F. App'x 931, 934 (10th Cir. 2017) ("Absent a constitutional requirement that only licensed physicians or psychiatrists may conduct suicide evaluations, it cannot be said that the jail was deliberately indifferent to the risk of Ernst's suicide by permitting LPNs and LPCs to determine whether he belonged on suicide watch.").

have been some policy requiring defendants to assess plaintiff for suicidal ideation prior to placing

him in Disciplinary Segregation once he insisted he was having suicidal thoughts.[4] Accordingly,

plaintiff's allegations that MSI had a custom and policy of medical understaffing and a lack of

meaningful physician supervision, allows this Court to conclude that MSI was deliberately

indifferent to the risk of plaintiff's suicidal ideation by failing to have a policy of either calling a

physician when an inmate complained of suicide or properly assessing that inmate for suicidal

thoughts according to a specific medical policy. The Court will issue process as to St. Louis City

on this claim.

### B.  Individual Capacity Claims

### 1.  Plaintiff's Claims for Deliberate Indifference to His Serious Medical Needs

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs

as to three separate issues: (1) when he was having chest pains, suffocation and difficulty breathing

during the month of August of 2021; (2) when defendant Correctional Officers Boatman and

Darden left him in his Disciplinary Segregation cell covered in mace for 30-45 minutes and failed

to allow him to wash off the mace; (3) and when he told defendant Correctional Officers Clark,

Nolan, Darden, and Boatman that he was suffering from suicidal ideation and they failed to get

him medical care for his needs.

When evaluating the constitutionality of pretrial-detainee conditions, "the proper inquiry

is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520,

535 (1979). "For under the Due Process Clause, a detainee may not be punished prior to an

---

[4]To the extent the City of St. Louis argues that it did not have notice of the issue, suicide is a "highly predictable consequence" of policies (or failure to have policies) that allow ineffective inmate checks or that prevent sufficient notice of inmates at risk for suicide. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 409 (1997). Accordingly, the City of St. Louis "does not get a 'one free suicide' pass" to learn that a predictable consequence might happen. *Woodward v. Corr. Med. Servs. of Illinois, Inc.,* 368 F.3d 917, 929 (7th Cir. 2004).

adjudication of guilt in accordance with due process of law." *Id.* The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.,* 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell*, 441 U.S. at 535 n.16). However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

To prevail on a claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations and citation omitted). A jail official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle*, 429 U.S. at 104-05 (1976).

With respect to plaintiff's assertions that defendant Officers Dixon, Hamilton, Robinson, Carr and Moorehead were deliberately indifferent to his serious medical needs when he was having chest pains, suffocation, and difficulty breathing during the month of August of 2021, the Court is unable to issue process on these claims for relief. As noted above, plaintiff failed to bring these claims against defendants in their individual capacities, but rather was silent as to the capacity under which he was suing these defendants. Therefore, the Court must assume that his claims against these defendants are brought as to their official capacities only. The Court has already found that plaintiff's allegations against all of the individual defendants in their official capacities are subject to dismissal. *See supra*.

The Court next turns to plaintiff's assertion that defendants Boatman and Darden left him in his Disciplinary Segregation cell covered in mace, and they failed to allow him to wash the mace off until at least 30-45 minutes had gone by. As alleged by plaintiff, the Court finds that he has sufficiently stated a decontamination claim against defendants Boatman and Darden for deliberate indifference to his serious medical needs with respect to their failure to allow him to decontaminate after he was maced, in violation of the Fourteenth Amendment, sufficient to survive review under 28 U.S.C. § 1915. *See, e.g., Clement v. Gomez,* 298 F.3d 898 (9th Cir. 2002); *Jacoby v. Mack*, 755 Fed. Appx. 888 (11th Cir. 2018); *Williams v. Byrd*, 2011 WL 1044917, No. 4:09–cv–00836–DPM–JJV (E.D. Ark. Feb. 24, 2011). The Court will issue process as to defendants Boatman and Darden in their individual capacities on this claim.

Last, the Court turns to plaintiff's allegations that defendants Clark, Nolan, Darden and Boatman acted with deliberate indifference in failing to act when he notified them that he was having suicidal thoughts. Plaintiff states that he told all four defendants when they first came to his cell about his suicidal thoughts, and he asserts that he told them a second time about his suicidal

ideation prior to the group's attempts to place him in Disciplinary Segregation. He alleges that he told defendants Boatman and Darden that he felt suicidal once again after he was able to decontaminate from the mace. However, despite his claims, he was provided with his property back, not removed from the Disciplinary Segregation cell and not referred to a medical professional.

As noted above, an inmate's risk of suicide is a serious medical need. *Gregoire*, 236 F.3d at 417. However, the question is not whether in hindsight plaintiff was at risk for suicide, but rather whether his condition at the time was either so obvious that a layperson would have recognized it or that it was "supported by medical evidence, like a physician's diagnosis." *Grayson v. Ross,* 454 F.3d 802, 809 (8th Cir. 2006) (quoting *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995)). In this case,

Here, plaintiff has alleged that he expressed suicidal thoughts to Correctional Officers Carr and Moorhead, who then reported his ideations to defendant Correctional Officers Clark, Nolan, Darden and Boatman. Plaintiff then repeated his suicide claims to four officers, not once, but twice. And approximately an hour later, he again repeated his claims to Officers Boatman and Darden. The Court, however, is without medical evidence as to the veracity of plaintiff's claims of suicide because none of the aforementioned defendants had plaintiff examined by a medical professional. Nonetheless, plaintiff did, in fact, attempt suicide on August 30, 2021, according to the allegations in his complaint. Based on these allegations, the Court finds that plaintiff has stated enough to survive initial review regarding defendants' failure to treat his suicidal ideations under the Fourteenth Amendment. The Court will issue process as to these claims against these four defendants - Clark, Nolan, Darden and Boatman - in their individual capacities.

## 2.  Plaintiff's Claims for Excessive Force Against Defendant Clark

Plaintiff states that defendant Clark, one of the Correctional Officers who responded to his assertions that he was having suicidal ideations on August 30, 2021, unlawfully subjected him to excessive force. He alleges that instead of properly assessing him for suicidal thoughts, Clark escorted him to the Disciplinary Segregation unit with intentions to place him in a cell in that unit. When plaintiff explained that he would not be able to breathe in the cell in the Disciplinary Segregation unit where the "chuckhole" was not open, defendant Clark purportedly said to him, "Oh, so you can't breathe, huh." At this point, plaintiff claims that when he again started to explain, with his hands cuffed behind his back, Clark, without provocation, sprayed him with mace and stated, "Ok, so you really can't breathe now, Mother Fucker."

The Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). *See also Bell*, 441 U.S. at 535 (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); and *Smith v. Conway Cty., Ark.,* 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id*.

After review of the facts and circumstances, the Court finds that plaintiff has alleged enough in his complaint to survive an excessive force claim against defendant Clark in his individual capacity. The Court will issue process or cause process to issue on this claim pursuant to 28 U.S.C. § 1915.

### 3.   Plaintiff's Negligence Claim

Plaintiff claims that defendants were negligent in housing individuals in MSI without medical staff. He does not indicate which defendant he is bringing his negligence claim against, nor does he articulate the type of negligence claim he is asserting, *i.e.,* garden variety negligence or medical malpractice.

In *Daniels v. Williams*, 474 U.S. 327, 329-30 (1986), the United States Supreme Court held that mere negligence on the part of state officials cannot state a claim for a due process violation under § 1983. Due process "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." *Id.* at 328 (emphasis in original). "[M]ere lack of due care by a state official" does not "deprive an individual of life, liberty or property under the Fourteenth Amendment." *Id.* at 330-31 (finding no due process claim where petitioner sought damages for injuries sustained when he slipped on a pillow negligently left on stairs by prison officials); *see also Lane v. Sarpy Cty.,* 165 F.3d 623, 624 (8th Cir. 1999) (no due process claim where officers mistakenly arrest and detain for six hours an individual believed to be a different individual with the same name).

Additionally, plaintiff is unable to bring a medical malpractice claim, as he has failed to allege that he has complied with the requirements for filing such a claim. Missouri law requires a plaintiff to file, within ninety (90) days of the date of the complaint, an affidavit attesting to the merits of an action such as the one at bar. Mo. Rev. Stat. § 538.225 (2000), *Devitre v. Orthopedic*

19

*Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 331 (Mo. 2011) (en banc). Section 538.225 provides, in relevant part:

1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

2. As used in this section, the term "legally qualified health care provider" shall mean a health care provider licensed in this state or any other state in the same profession as the defendant and either actively practicing or within five years of retirement from actively practicing substantially the same specialty as the defendant.

3. The affidavit shall state the name, address, and qualifications of such health care providers to offer such opinion.

4. A separate affidavit shall be filed for each defendant named in the petition.

5. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days.

6. If the plaintiff or his attorney fails to file such affidavit the court shall, upon motion of any party, dismiss the action against such moving party without prejudice.

The statute was intended to "cull at an early stage of litigation" meritless suits against health care providers. *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W. 2d 503, (Mo. 1991) (en banc).

Two elements must be present for a Court to determine that a plaintiff is required to file a health care affidavit under the statute. *Devitre*, 349 S.W.3d at 331–32. First, the parties' relationship must be one of health care provider and recipient; and second, the claim must solely relate to the provision of health care services. *Id.* at 332; *Crider v. Barnes–Jewish St. Peters Hosp.*,

*Inc.*, 363 S.W.3d 127, 130 (Mo. Ct. App. 2012). Here, both parts of this test are met. Thus, to the extent plaintiff intended to bring a medical malpractice claim, his ability to do so is circumscribed. Based on the aforementioned, the Court finds that plaintiff's claims for negligence are subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis, Doc. [2], is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall add defendant St. Louis City as a defendant in this action.

**IT IS FURTHER ORDERED** that that the Clerk shall issue process or cause process to issue upon the complaint as to defendant St. Louis City as to plaintiff's claim that MSI was deliberately indifferent to the risk of plaintiff's medical issues by failing to have a policy (or not adhering to such policy) of calling a physician when an inmate complained of chest pains, suffocation and/or difficulty breathing. Defendant St. Louis City shall be served through the waiver agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that that the Clerk shall issue process or cause process to issue upon the complaint as to defendant St. Louis City as to plaintiff's claim that MSI was deliberately indifferent to the risk of plaintiff's suicidal ideation by failing to have a policy (or not

adhering to such policy) of either calling a physician when an inmate complained of suicide or properly assessing that inmate for suicidal thoughts according to a specific medical policy. Defendant St. Louis City shall be served through the waiver agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Correctional Officers Boatman and Darden, in their individual capacities, as to plaintiff's claims for deliberate indifference to his serious medical needs with respect to their failure to allow him to decontaminate after he was maced, in violation of the Fourteenth Amendment. Defendants shall be served in accordance with the waiver agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Correctional Officers Clark, Nolan, Darden and Boatman, in their individual capacities, for claims for deliberate indifference to his serious medical needs relating to their failure to treat his suicidal ideations in violation of the Fourteenth Amendment. Defendants shall be served in accordance with the waiver agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Correctional Officer Clark, in his individual capacity, as to plaintiff's claims for excessive force in violation of the Fourteenth Amendment. Defendant Clark shall be served in accordance with the waiver agreement the Court maintains with the St. Louis City Counselor's Office.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants St. Louis City, Clark, Nolan, Darden and Boatman shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against the individual defendants are **DENIED AND DISMISSED**, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that as to defendants, Correctional Officers Dixon, Hamilton, Robinson, Carr and Moorehead, as well as the St. Louis City Justice Center, plaintiff's complaint is **DENIED AND DISMISSED**, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's claims for negligence are **DENIED AND DISMISSED**, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

A separate Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 27th day of October, 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE